1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (#134180)
ROBERT V. PRONGAY (#270796)
LESLEY F. PORTNOY (#304851)
CHARLES H. LINEHAN (#307439 )
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL   HUSTIG,   Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>            v.<br><br>OBALON THERAPEUTICS, INC., ANDREW RASDAL, and WILLIAM PLOVANIC,<br><br>                              Defendants. | Case No.:  **'18 CV 0352 AJB  WVG**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Hustig ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Obalon Therapeutics, Inc. ("Obalon" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Obalon; and (c) review of other publicly available information concerning Obalon.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of all persons and entities that purchased or otherwise acquired Obalon common stock between October 5, 2016 and January 23, 2018, inclusive (the "Class Period").   Plaintiff pursues claims under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Obalon is purportedly a medical device company that develops and commercializes medical devices to treat obese and overweight people by facilitating weight loss.  The Company claims that its initial product offering is the Obalon balloon system, a U.S. Food and Drug Administration ("FDA") approved swallowable, gas-filled intragastric balloon designed to provide progressive and sustained weight loss in obese patients.

3.     On January 23, 2018, Obalon issued a press release disclosing that "a purported whistleblower contacted KPMG LLP, the Company's independent auditors, to make certain allegations relating to allegedly improper revenue recognition during the Company's fourth fiscal quarter of 2017." The Company further stated that "Obalon's Audit Committee will oversee an internal investigation of these allegations."

4.     On this news, Obalon's stock price fell $1.73 per share, or 33.3%, to close at $3.46 per share on January 23, 2018, on unusually heavy volume. The $3.46 closing price represented a total decline of $11.54, or nearly 77%, from the IPO price of $15.00 per share.

5.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company recognized revenue in violation of Generally Accepted Accounting principles ("GAAP"); (2) that the Company lacked adequate internal controls over accounting and financial reporting; and (3) that, as a result of the foregoing, the Company's financial statements and Defendants' statements about Obalon's business, operations, and prospects, were materially false and misleading at all relevant times.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  A significant portion of Defendants' actions, and the subsequent damages, took place in this Judicial District.  Additionally, Obalon's principal executive offices are located within this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Michael Hustig, as set forth in the accompanying certification, incorporated by reference herein, purchased Obalon stock during the Class Period,

pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Obalon Therapeutics, Inc. is incorporated in Delaware and its principal executive offices are located in Carlsbad, California.   Obalon's common stock trades on the NASDAQ Stock Market (the "NASDAQ") under the symbol "OBLN."

13.     Defendant Andrew Rasdal ("Rasdal") was the President and Chief Executive Officer ("CEO") and a Director of Obalon at all relevant times.  Rasdal signed or authorized the signing of the Company's Registration Statement filed with the SEC.

14.     Defendant William Plovanic ("Plovanic") was the Chief Financial Officer ("CFO") of Obalon at all relevant times.  Plovanic signed or authorized the signing of the Company's Registration Statement filed with the SEC.

15.     Defendant Nooshin Hussainy ("Hussainy") was the Vice President of Finance of Obalon at all relevant time.   Hussainy signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16.     Defendants Rasdal, Plovanic, and Hussainy are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the

contents of Obalon's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS
### Background

17. Obalon is purportedly a medical device company that develops and commercializes medical devices to treat obese and overweight people by facilitating weight loss. The Company claims that its initial product offering is the Obalon balloon system, an FDA approved swallowable, gas-filled intragastric balloon designed to provide progressive and sustained weight loss in obese patients.

18. On October 5, 2016, the SEC declared effective the Form S-1 that Obalon filed on September 9, 2016, and amended on September 26, 2016. The

Form S-1 and all amendments thereto form part of the "Registration Statement" for the IPO.

19. On October 6, 2016, the Company filed with the SEC its IPO prospectus (the "Prospectus"), which also forms part of the Registration Statement. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

20. On October 5, 2016, Obalon priced its IPO of 5 million shares of common stock at a price of $15.00 per share, exclusive of the underwriters' option to purchase 750,000 additional shares. According to the Company, the Offering raised approximately $67.2 million for the Company, net of underwriting discounts, commissions, and estimated offering expenses.

**Materially False and Misleading
Statements Issued During the Class Period**

21. The Class Period begins on October 5, 2016. Prior to the start of the Class Period, on September 26, 2016, the Company filed an amendment to its Form S-1. In the amendment, the Company, in relevant part, stated:

**CRITICAL ACCOUNTING POLICIES AND ESTIMATES**

Management's discussion and analysis of our financial condition and results of operations is based on our financial statements, which have been prepared in accordance with U.S. generally accepted accounting principles, or GAAP. The preparation of these financial statements requires us to make estimates and assumptions for the reported amounts of assets, liabilities, revenue, expenses and related disclosures. Our estimates are based on our historical experience and on various other factors that we believe are reasonable under the circumstances, the results of which form the basis for making judgments about the

carrying value of assets and liabilities that are not readily apparent from other sources. Actual results may differ from these estimates under different assumptions or conditions and any such differences may be material.

While our significant accounting policies are more fully described in the notes to our financial statements appearing elsewhere in this prospectus, we believe the following discussion addresses our most critical accounting policies, which are those that are most important to our financial condition and results of operations and require our most difficult, subjective and complex judgments.

**Revenue recognition**

Revenue relates to sales of components of the Obalon balloon system, which includes the balloon and accessory kit, EzFill inflation system, pre-filled can of gas and placebo capsule. As of June 30, 2016, the product is sold to one customer, Bader, a related party and healthcare product distributor based in Sufat, Kuwait. We recognize revenue when the following revenue recognition criteria are met:

➤ ***Persuasive evidence of an arrangement exists.*** We consider this criterion satisfied when we have an agreement or contract in place with the customer.

➤ ***Delivery has occurred.*** Our standard terms specify that title and risk of loss transfers upon shipment to customer. We use third-party shipping documents to verify that title has transferred.

➤ ***The selling price is fixed or determinable.*** We assess whether the sales price is fixed or determinable at the time of the transaction. Sales prices are documented in the executed sales contract or purchase order received prior to shipment. Our standard terms do not allow for trial or evaluation periods, rights of return or refund, payments contingent upon the customer obtaining financing or other terms that could impact the customer's obligation.

➤ ***Collectability is reasonably assured.*** We assess whether collection is reasonably assured based on a number of factors, including the customer's past transaction history and credit worthiness.

*       *       *

**UNAUDITED CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS AND COMPREHENSIVE LOSS**
(in thousands, except shares and per share data)

and diluted                                                                9,691,211

22.    On October 6, 2016, the Company filed its Prospectus.  The prospectus reaffirmed the statements regarding GAAP compliance and revenue identified in ¶21.

23.     On November 3, 2017, Obalon issued a press release entitled "Obalon Announces Third Quarter 2017 Financial Results."  Therein, the Company, in relevant part, stated:

**Third Quarter 2017 highlights:**

- Revenue grew 42% sequentially over Q2-17 to $2.8 million
- Gross margin improved to 53%
- First sales to multi-store aesthetic national account
- Submitted PMA-Supplement for Obalon Navigation System
- Submitted PMA-Supplement for Obalon Touch Inflation Dispenser

The Company reported total revenues of $2.8 million for the third quarter of 2017, compared to $0.8 million for the third quarter of 2016. Net loss was reported at $9.2 million compared to a net loss of $5.3 million in the third quarter of 2016 and net loss per share for the quarter was $0.55 as compared to net loss per share of $5.46 in the third quarter of 2016.

24.     On November 10, 2016, Obalon filed its quarterly report with the SEC on Form 10-Q for the quarterly period ended September 30, 2016.  The Company's 10-Q was signed by Defendants Rasdal and Plovanic and reaffirmed the Company's financial results previously announced on November 3, 2016.  The Form 10-Q also stated that the Company's financial statements were "prepared in accordance with United States generally accepted accounting principles, or U.S. GAAP."

25.     The Company's Form 10-Q contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), signed by defendants Rasdal and Plovanic, who certified:

1. I have reviewed this Quarterly Report on Form 10-Q of Obalon Therapeutics, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in the report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or person performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

26.     On February 23, 2017, Obalon issued a press release entitled, "Obalon Therapeutics, Inc. Announces Fourth Quarter and Full Year 2016 Financial Results." Therein, the Company, in relevant part, stated:

**Fourth Quarter 2016 Results**

The Company reported total revenues of $0.8 million for the fourth quarter, compared to $1.0 million for the fourth quarter of 2015. Net loss was reported at $7.5 million compared to a net loss of $4.8 million in the fourth quarter of 2015 and net loss per share for the quarter was $0.51 as compared to net loss per share of $8.42 in the fourth quarter of 2015.

Cost of goods sold was $0.9 million during the three months ended December 31, 2016, up from $0.7 million for the prior year period. Gross profit for the fourth quarter was a negative $0.1 million, resulting in a negative gross margin of 13%, compared to a positive gross profit of $0.3 million and 33% for the fourth quarter of 2015.

Research and Development expense for the fourth quarter totaled $2.6 million, down from $3.8 million in the fourth quarter of 2015, and Selling, General and Administrative, or SG&A, expense increased to $4.8 million for the fourth quarter, compared to $1.2 million in the fourth quarter 2015.

Operating loss for the fourth quarter was $7.5 million, compared to an operating loss of $4.7 million for the fourth quarter of 2015.
Net loss for the quarter was $7.5 million, or $0.51 per share as compared to a net loss of $4.8 million or $8.42 per share for fourth quarter of 2015.

At December 31, 2016, cash, cash equivalents and short term marketable securities were $75.5 million and long-term debt was $9.9 million.

On October 12, 2016, Obalon closed an initial public offering of 5.0 million shares were at a price of $15.00 per share for gross proceeds of $75.0 million and net proceeds of $67.2 million.

**Full Year 2016 Results**

Obalon reported full year 2016 total revenues of $3.4 million, a decrease from $4.0 million for the full year 2015.

Gross profit for the full year 2016 was $0.6 million, which equates to a gross margin of 17%. This compared to gross profit of $1.5 million in the prior year and a gross margin of 38%.

Operating loss was $19.5 million as compared to an operating loss of $14.9 million in the prior year.

Net loss for the full year 2016 increased to $20.5 million, or $4.85 per share, compared to a net loss of $15.6 million, or $27.14 per share, in the prior year.

27.     On February 23, 2017, Obalon filed its annual report with the SEC on Form 10-K for the year ended December 31, 2016.  The Company's Form 10-K was signed by Defendants Rasdal and Plovanic, and affirmed the Company's financial results announced in the press release issued the same day.  The Form 10-K further stated that the Company's financial statements were "prepared in accordance with U.S. generally accepted accounting principles, or GAAP."  The Form 10-K also contained certifications pursuant to SOX, signed by defendants Rasdal and Plovanic, substantially similar to the certifications described in ¶25, *supra*.

28.     On May 10, 2017, Obalon issued a press release entitled, "Obalon Announces First Quarter 2017 Financial Results."   Therein, the Company, in relevant part, stated:

> The Company reported total revenues of $1.5 million for the first quarter of 2017, compared to $1.1 million for the first quarter of 2016. All revenues in the first quarter 2017 were realized from sale of the Obalon balloon system in the United States, compared to all revenues in the first quarter of 2016 which were from sales to our distributor in the Middle East. Net loss was reported at $7.7 million compared to a net loss of $3.6 million in the first quarter of 2016 and net loss per share for the quarter was $0.47 as compared to net loss per share of $6.22 in the first quarter of 2016.
>
> Cost of goods sold was $0.8 million during the three months ended March 31, 2017, up from $0.6 million for the prior year period. Gross profit for the first quarter of 2017 was $0.6 million, resulting in a gross margin of 44%, compared to a gross profit of $0.4 million and gross margin of 42% for the first quarter of 2016.
>
> Research and Development expense for the first quarter of 2017 totaled $2.4 million, down from $2.5 million in the first quarter of 2016, and Selling, General and Administrative expense increased to $5.9 million for the first quarter, compared to $1.4 million in the first quarter 2016.

Operating loss for the first quarter of 2017 was $7.7 million, compared to an operating loss of $3.4 million for the first quarter of 2016.

At March 31, 2017, cash, cash equivalents and short-term investments were $66.7 million and long-term debt was $10.0 million.

29.     On the same day, May 10, 2017, Obalon filed its quarterly report with the SEC on Form 10-Q for the fiscal quarter ended March 31, 2017.   The Company's Form 10-Q was signed by Defendants Rasdal and Plovanic, and affirmed the Company's financial results announced in the press release issued the same day. The Form 10-Q further stated that the Company's financial statements were "prepared in accordance with U.S. generally accepted accounting principles, or GAAP."  The Form 10-Q also contained certifications pursuant to SOX, signed by Defendants Rasdal and Plovanic, substantially similar to the certifications described in ¶25, *supra*.

30.     On August 2, 2017, Obalon issued a press release entitled, "Obalon Announces Second Quarter 2017 Financial Results."  Therein, the Company, in relevant part, stated:

**Second Quarter 2017 highlights:**

- Revenue grew 33% sequentially over Q1-17 to $2.0 million

- Gross margin improved to 50%

- First commercial shipments of 6-month product to Middle East in July 2017

- First US shipments of HPMC, vegetable based capsule, in July 2017

The Company reported total revenues of $2.0 million for the second quarter of 2017, compared to $0.8 million for the second quarter of 2016. Net loss was reported at $7.7 million compared to a net loss of $4.1 million in the second quarter of 2016 and net loss per share for the

quarter was $0.46 as compared to net loss per share of $7.15 in the second quarter of 2016.

Cost of goods sold was $1.0 million during the three months ended June 30, 2017, up from $0.7 million for the prior year period. Gross profit for the second quarter of 2017 was $1.0 million, resulting in a gross margin of 50%, compared to a gross profit of $0.1 million and gross margin of 14% for the second quarter of 2016.

Research and Development expense for the second quarter of 2017 totaled $2.8 million, up from $2.6 million in the second quarter of 2016, and Selling, General and Administrative expense increased to $5.9 million for the second quarter of 2017, compared to $1.6 million in the second quarter 2016.

Operating loss for the second quarter of 2017 was $7.6 million, compared to an operating loss of $4.1 million for the second quarter of 2016.

At June 30, 2017, cash, cash equivalents and short-term investments were $60.7 million and long-term debt was $10.0 million.

31.    On the same day, August 2, 2017, Obalon filed its quarterly report with the SEC on Form 10-Q for the fiscal quarter ended June 30, 2017.  The Company's Form 10-Q was signed by Defendants Rasdal and Plovanic, and affirmed the Company's financial results announced in the press release issued the same day. The Form 10-Q further stated that the Company's financial statements were "prepared in accordance with U.S. generally accepted accounting principles, or GAAP."   The Form 10-Q also contained certifications pursuant to SOX, signed by Defendants Rasdal and Plovanic, substantially similar to the certifications described in ¶25, *supra*.

32.    On November 3, 2017, Obalon issued a press release entitled, "Obalon Announces Third Quarter 2017 Financial Results."   Therein, the Company, in relevant part, stated:

**Third Quarter 2017 highlights:**

- Revenue grew 42% sequentially over Q2-17 to $2.8 million

- Gross margin improved to 53%

- First sales to multi-store aesthetic national account

- Submitted PMA-Supplement for Obalon Navigation System

- Submitted PMA-Supplement for Obalon Touch Inflation Dispenser

The Company reported total revenues of $2.8 million for the third quarter of 2017, compared to $0.8 million for the third quarter of 2016. Net loss was reported at $9.2 million compared to a net loss of $5.3 million in the third quarter of 2016 and net loss per share for the quarter was $0.55 as compared to net loss per share of $5.46 in the third quarter of 2016.

Cost of goods sold was $1.3 million during the three months ended September 30, 2017, up from $0.6 million for the prior year period. Gross profit for the third quarter of 2017 was $1.5 million, resulting in a gross margin of 53%, compared to a gross profit of $0.1 million and gross margin of 17% for the third quarter of 2016.

Research and Development expense for the third quarter of 2017 totaled $2.8 million, up from $2.2 million in the third quarter of 2016, and Selling, General and Administrative expense increased to $7.8 million for the third quarter of 2017, compared to $2.4 million in the third quarter 2016. Selling, General and Administrative expenses in the third quarter 2017 included a one-time, non-cash charge of $1.4 million for litigation settlement.

Operating loss for the third quarter of 2017 was $9.1 million, compared to an operating loss of $4.5 million for the third quarter of 2016.

As of September 30, 2017, cash, cash equivalents and short-term investments were $53.4 million and debt was $10.0 million.

33.     On the same day, November 3, 2017, Obalon filed its quarterly report with the SEC on Form 10-Q for the fiscal quarter ended September 30, 2017.  The Company's Form 10-Q was signed by Defendants Rasdal and Plovanic, and affirmed the Company's financial results announced in the press release issued the same day. The Form 10-Q further stated that the Company's financial statements were "prepared in accordance with U.S. generally accepted accounting principles, or

GAAP." The Form 10-Q also contained certifications pursuant to SOX, signed by Defendants Rasdal and Plovanic, substantially similar to the certifications described in ¶25, *supra*.

34. The above statements identified in ¶¶21-33 were materially false and/or misleading when made because Defendants failed to disclose: (1) that the Company recognized revenue in violation of GAAP; (2) that the Company lacked adequate internal controls over accounting and financial reporting; and (3) that, as a result of the foregoing, the Company's financial statements and Defendants' statements about Obalon's business, operations, and prospects, were materially false and misleading at all relevant times.

### Disclosures at the End of the Class Period

35. On January 23, 2018, Obalon issued a press release disclosing that "a purported whistleblower contacted KPMG LLP, the Company's independent auditors, to make certain allegations relating to allegedly improper revenue recognition during the Company's fourth fiscal quarter of 2017." The Company further stated that "Obalon's Audit Committee will oversee an internal investigation of these allegations." In greater part, the Company stated:

> Obalon Therapeutics, Inc. (the "Company" or "Obalon") (NASDAQ:OBLN) today announced the termination of the underwriting agreement and cancellation of its previously announced public offering (the "Offering") of 5,454,545 shares of its common stock at a public offering price of $5.50 per share.
>
> UBS Investment Bank, Canaccord Genuity and Stifel were acting as joint book-running managers for the offering. BTIG was acting as a co-manager. The offering was being made pursuant to a shelf registration

statement (File No. 333-221264) previously filed with and declared effective by the U.S. Securities and Exchange Commission.

The Offering was scheduled to close on January 23, 2018. However, a purported whistleblower contacted KPMG LLP, the Company's independent auditors, to make certain allegations relating to allegedly improper revenue recognition during the Company's fourth fiscal quarter of 2017 ("Q4 2017"). These allegations were reported to Obalon late in the day on January 22, 2018, making it infeasible for the Company to complete an investigation of the allegations prior to the intended closing of the public offering.

Obalon's Audit Committee will oversee an internal investigation of these allegations (the "Investigation"). The Company is currently unable to predict the timing or outcome of the Investigation. Based on information known at this time, management does not currently believe material adjustments to the preliminary, unaudited revenue for Q4 2017 and full year 2017 previously reported by the Company will be required as a result of these allegations. The Company intends to make a further announcement regarding the outcome of the Investigation as soon as practicable.

36.     On this news, Obalon's stock price fell $1.73 per share, or 33.3%, to close at $3.46 per share on January 23, 2018, on unusually heavy volume.   The $3.46 closing price represented a total decline of $11.54, or nearly 77%, from the IPO price of $15.00 per share.

### OBALON'S VIOLATION OF GAAP RULES IN ITS FINANCIAL STATEMENTS FILED WITH THE SEC

37.     The above-identified financial statements and statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper recording of revenue, in violation of GAAP rules.

38.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting

practice at a particular time.  Regulation S-X (17 C.F.R. § 210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

39.  Given the accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)  The principle that "the results for each interim period should be based on the accounting principles and practices used by an enterprise in the preparation of its latest annual financial statements" was violated (APB 28, 10);

(b)  The principle that financial reporting should "provide financial information about the reporting entity that is useful to existing and potential investors, lenders, and other creditors in making decisions about providing resources to the entity" was violated (FASB Statement of Concepts No. 8, OB2);

(c)  The principle that financial reporting should "provide information about the financial position of a reporting entity, which is information about the entity's economic resources and the claims against the reporting entity" was violated (FASB Statement of Concepts No. 8, OB12);

(d)     The principle that financial information "must be relevant and faithfully represent what it purports to represent" was violated (FASB Statement of Concepts No. 8, QC4);

40.     The adverse information concealed by Defendants during the Class Period and detailed above was also in violation of Item 303 of Regulation S-K under the federal securities laws (17 C.F.R. § 229.303).

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Obalon securities between October 5, 2016 and January 23, 2018, inclusive, seeking to pursue remedies under the Exchange Act; and who were damaged thereby (collectively, the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Obalon's securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed

Class.  Millions of Obalon shares were traded publicly during the Class Period on the NASDAQ.  As of November 1, 2017, there were 17,441,817 shares of the Company's common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Obalon or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Obalon ; and

(c)   whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

47.   The market for Obalon's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Obalon's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Obalon's securities relying upon the integrity of the market price of the Company's securities and market information relating to Obalon, and have been damaged thereby.

48.   During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Obalon's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed

to disclose material adverse information and/or misrepresented the truth about Obalon's business, operations, and prospects as alleged herein.

49.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Obalon's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

50.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

51.    During the Class Period, Plaintiff and the Class purchased Obalon's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to

the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

52.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Obalon, his/her control over, and/or receipt and/or modification of Obalon's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Obalon, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

53.    The market for Obalon's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Obalon's securities traded at artificially inflated prices during the Class Period.  On October 6, 7, and 10, 2016, the

Company's stock closed at a Class Period high of $15 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Obalon's securities and market information relating to Obalon, and have been damaged thereby.

54.    During the Class Period, the artificial inflation of Obalon's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Obalon's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Obalon and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

55.    At all relevant times, the market for Obalon's securities was an efficient market for the following reasons, among others:

(a)    Obalon stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Obalon filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Obalon regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Obalon was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

56.    As a result of the foregoing, the market for Obalon's securities promptly digested current information regarding Obalon from all publicly available sources and reflected such information in Obalon's stock price. Under these circumstances, all purchasers of Obalon's securities during the Class Period suffered similar injury through their purchase of Obalon's securities at artificially inflated prices and a presumption of reliance applies.

57.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded

on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## <u>NO SAFE HARBOR</u>

58. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that

the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Obalon  who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder (Against the Company and the Individual Defendants)

59.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60.    During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Obalon's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

61.    the Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Obalon's securities in violation of Section 10(b) of

the Exchange Act and Rule 10b-5.  The Company and the Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

62.    The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Obalon's financial well-being and prospects, as specified herein.

63.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Obalon's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Obalon  and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

64.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were

high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

65.     The Company and the Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Obalon's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by the Company and the Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being,

and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

66.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Obalon's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Company and the Individual Defendants, but not disclosed in public statements by these defendants during the Class Period, Plaintiff and the other members of the Class acquired Obalon's securities during the Class Period at artificially high prices and were damaged thereby.

67.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Obalon was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other

members of the Class would not have purchased or otherwise acquired their Obalon

securities, or, if they had acquired such securities during the Class Period, they

would not have done so at the artificially inflated prices which they paid.

68.    By virtue of the foregoing, the Company and the Individual Defendants

have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated

thereunder.

69.    As a direct and proximate result of Defendants' wrongful conduct,

Plaintiff and the other members of the Class suffered damages in connection with

their respective purchases and sales of the Company's securities during the Class

Period.

## SECOND CLAIM
### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

70.    Plaintiff repeats and re-alleges each and every allegation contained

above as if fully set forth herein.

71.    The Individual Defendants acted as controlling persons of Obalon

within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By

virtue of their high-level positions, and their ownership and contractual rights,

participation in and/or awareness of the Company's operations and/or intimate

knowledge of the false financial statements filed by the Company with the SEC and

disseminated to the investing public, the Individual Defendants had the power to

influence and control and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

73.     As set forth above, Obalon and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Federal

Rules of Civil Procedure 23;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 14, 2018                **GLANCY PRONGAY & MURRAY LLP**


By: *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com

*Counsel for Plaintiff*

DocuSign Envelope ID: 34A96899-67BB-43A6-A280-B85157E50222

**SWORN CERTIFICATION OF PLAINTIFF**

**OBALON THERAPEUTICS, INC. SECURITIES LITIGATION**

I, Mike Husting individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase Obalon Therapeutics, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in Obalon Therapeutics, Inc. securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

1/26/2018
_____
        Date

DocuSigned by:

_____
178560D6DA0A4A5...

                Mike Husting

**Mike Husting's Transactions in
Obalon Therapeutics, Inc. (OBLN)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 1/18/2018 | Bought | 130 | $6.3000 |
| 1/18/2018 | Bought | 100 | $6.3000 |
| 1/18/2018 | Bought | 200 | $6.3000 |
| 1/18/2018 | Bought | 570 | $6.3000 |
| 1/19/2018 | Bought | 500 | $5.3158 |
| 1/23/2018 | Sold | -123 | $4.0000 |
| 1/23/2018 | Sold | -77 | $4.0000 |
| 1/23/2018 | Sold | -500 | $4.0000 |
| 1/23/2018 | Sold | -650 | $4.0001 |
| 1/23/2018 | Sold | -150 | $4.0001 |