UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re OBALON THERAPEUTICS, INC. SECURITIES ACTION,

This Document Relates to:

ALL ACTIONS

Case No.: 3:18-cv-0352-AJB-WVG

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART OBALON DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT (Doc. No. 41);**

**(2) GRANTING UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT (Doc. No. 42); AND**

**(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE (Doc. No. 41-2.)**

Presently before the Court are: (1) Defendants Obalon Therapeutics, Inc. ("Obalon" or "the Company"), Andrew P. Rasdal, William J. Plovanic, Nooshin Hussainy, Kim Kamdar, Raymond Dittamore, Douglas Fisher, Les Howe, and Sharon Stevenson's

(collectively, the "Obalon Defendants") motion to dismiss the Consolidated Complaint ("Complaint") (Doc. No. 41); and (2) Defendants UBS Securities LLC, Canaccord Genuity Inc., Stifel, Nicolaus & Co., Inc., and BTIG, LLC's (the "Underwriter Defendants" and collectively with the Obalon Defendants, "Defendants") motion to dismiss the Complaint (Doc. No. 42.) Concurrently with the motions to dismiss, Defendants filed a request for incorporation by reference and judicial notice. (Doc. No. 41-2.) Lead Plaintiff Inter-Local Pension Fund GCC/IBT ("Lead Plaintiff") and Plaintiff Teamster Affiliates Pension Plan ("Plaintiff TAPP" collectively with Lead Plaintiff, "Plaintiffs") oppose the motions to dismiss (Doc. Nos. 48, 49), and oppose the request for incorporation by reference and judicial notice. (Doc. No. 50.) For the reasons set forth below: (1) the Obalon Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**; (2) the Underwriter Defendants' motion to dismiss is **GRANTED**, without leave to amend; and (3) Defendants' request for incorporation by reference and judicial notice is **GRANTED IN PART AND DENIED IN PART**.

## RELEVANT BACKGROUND

The instant action is a securities class action brought by Lead Plaintiff and Plaintiff TAPP, alleging false and misleading statements in connection with the sales of securities. Lead Plaintiff seeks relief against Defendants Obalon, Rasdal, and Plovanic pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, on behalf of itself and all persons or entities that purchased or acquired publicly traded securities of Obalon between October 6, 2016 and May 11, 2018. (Complaint "Compl." ¶ 14.) Plaintiff TAPP seeks relief against all Defendants pursuant to §§ 11 and 15 of the Securities Act of 1933 ("Securities Act"). (Compl. ¶ 14.)

### I. The Company and the Obalon Balloon

Obalon is a medical device company based in Carlsbad, California. (Doc. No. 41-1 at 9.) Obalon's sole product is the Obalon balloon system ("the Obalon Balloon"), an intragastric balloon device that is placed in a patient's stomach to simulate a feeling of fullness. (Compl. ¶ 1.) The Obalon Balloon was created to help patients achieve weight

loss. (*Id.*) To use the Obalon Balloon, a patient must first swallow one or more capsules containing the inflatable balloon. (*Id.*) The Obalon Balloon is attached to a long catheter, and once the capsule is swallowed, an x-ray is taken to check the placement of the balloon. (*Id.*) After the capsule dissolves, the balloon is inflated with gas through the catheter. (*Id.*) The catheter is then detached, and pulled out from the stomach through the patient's throat. (*Id.*) After six months, a doctor will perform an endoscopic procedure to pop and remove the balloon from the patient's stomach. (*Id.*) Obalon is not the only maker of intragastric balloons. (*Id.* ¶ 2.) But unlike the Obalon Balloon's competitors, the Obalon Balloon does not require an endoscopic procedure to initially place the device into a patient's stomach. (*Id.*) As such, the Obalon Balloon is the only balloon device on the market that is swallowed by the patient, and then filled with gas. (*Id.*)

## II. Factual Allegations Underlying the Complaint

### A. Obalon's Initial Public Offering

Obalon went public on October 12, 2016. (Doc. No. 41-1 at 14.) In connection with its initial public offering ("IPO"), Obalon disclosed in its registration statement, amended registration statement, and prospectus ("the Offering Materials") information about the Obalon Balloon and the Six-Month Adjunctive Weight Reduction Therapy ("SMART") trial, a clinical trial conducted to evaluate the safety and efficacy of the Obalon Balloon. (*Id.* at 9.) In its Offering Materials, Obalon explained the advantages of the Obalon Balloon as compared to its competitors, and discussed the balloon's "ease of placement," "favorable safety profile," and "simple and convenient placement." (*Id.* at 13–14.) Obalon further disclosed that "90.8% of patients who received the Obalon balloon system experienced an event that the FDA classifies as an adverse device event"; that Obalon patients lost an average of 15.1 pounds during the six-month treatment period; and that "7.6% of the combined treatment and control group patients failed to swallow a capsule with the microcatheter attached despite success swallowing a placebo that did not have a catheter attached." (*Id.* at 14.)

### B. The Northland Report

The following year, on June 21, 2017, a securities analyst with Northland Securities, Inc. published a report ("the Northland Report") that provided a third-party critique of Obalon's representations about the Obalon Balloon's characteristics. (Compl. ¶¶ 169–75.) The Northland Report was based on the SMART study results, Obalon's public filings, and "other scientific papers, journals, and blogs." (*Id.* ¶¶ 170–71, 174.) The Northland Report expressed concerns over the performance of the device, specifically, the ease of placement, safety, and efficacy of the Obalon Balloon. (*Id.* ¶¶ 169–75.) Based on these findings, the Northland Report ultimately concluded the Obalon stock price was overvalued. (*Id.* ¶¶ 170–71.) Following the Northland Report, the Obalon stock price dropped from $10.96 per share to $10.12 per share. (*Id.* ¶ 176.)

### C. The New Year Promotion, the Secondary Offering, and the Whistleblower Allegations

Between October 1 and December 29, 2017, Obalon launched a year-end promotion just in time for New Year weight loss resolutions. (Doc. No. 41-1 at 15.) The promotion offered patient leads to doctors who purchased the device in the promotional period, and also offered rebates to patients participating in the weight-loss challenge. (*Id.*) As a result of this promotion, Obalon announced strong Q4 2017 results. (*Id.*)

After the announcement of its strong Q4 2017, on January 16, 2018, Obalon announced a secondary offering of $35 million in Obalon stock as a way to raise more capital for the Company. (Compl. ¶ 179.) Following this announcement of the Company's need for public financing, Obalon's stock price dropped from $7.93 per share on January 16, 2018 to $5.24 per share on January 19, 2018. (*Id.* ¶ 180.)

Then, on January 23, 2018, Obalon disclosed that a whistleblower had submitted a complaint to the Company's independent auditors at KPMG. (*Id.* ¶ 181.) The complaint purportedly described "improper revenue recognition during the Company's fourth fiscal quarter of 2017," and alleged that management "misled investors" as to the Company's financial condition. (*Id.* ¶ 183.) Obalon cancelled its secondary offering in order to

investigate the claims. (*Id.* ¶ 181.) After the revelation of the whistleblower allegations, Obalon's stock price dropped again from $5.19 per share to $3.46 per share. (*Id.* ¶ 182.) On February 20, 2018, the Company announced that it had completed its investigation, and concluded that the whistleblower allegations were without merit. (*Id.* ¶ 183.)

On March 5, 2018, Obalon filed its 2017 Form 10-K, and released audited financials, making a correction that deferred $147,000 of revenue from Q4 2017 to 2018. (*Id.* ¶ 162.) On May 10, 2018, Obalon announced its Q1 2018 earnings, which revealed that Q1 2018 brought in the lowest amount of total revenue for any quarter. (*Id.* ¶ 186.) Following this news, Obalon's stock price fell from $4.32 per share to $2.85 per share. (*Id.* ¶ 189.)

## PROCEDURAL BACKGROUND

On February 14, 2018, Plaintiff Michael Hustig filed a Class Action Complaint against Defendants Obalon, Rasdal, and Plovanic. (Doc. No. 1.) On April 16, 2018, lead plaintiff motions were filed (Doc. Nos. 3–4), and Inter-Local Pension Fund GCC/IBT was appointed as Lead Plaintiff. (Doc. No. 10.) Lead Plaintiff and Plaintiff TAPP then filed a Consolidated Complaint on October 5, 2018. (Doc. No. 17.) Defendants filed motions to dismiss the Consolidated Complaint, and Lead Plaintiff and Plaintiff TAPP objected. (Doc. Nos. 41–42, 48–49.) These motions were fully briefed by both parties on February 19, 2019. (Doc. Nos. 58–59.)

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. Accordingly, dismissal under Rule 12(b)(6) is proper where the complaint fails to set forth a "cognizable legal theory," or where there is "an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citing *Ballistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" under Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all "allegations of material fact," and construe them "in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

## II. Rule 9(b)

A complaint alleging fraud must also comply with Rule 9(b). Under Rule 9(b), when the complaint includes allegations of fraud, a party must "state with particularity the circumstances constituting fraud or mistake," even though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "In other words, the complaint must set forth what is false or misleading about a statement, and why it is false." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation marks omitted). Additionally, fraud claims made pursuant to the Securities Exchange Act must "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), as amended (Feb. 10, 2009).

## III. Private Securities Litigation Reform Act of 1995 ("PSLRA")

Finally, claims brought under the Exchange Act are also subject to the requirements of the PSLRA regarding scienter. The PSLRA "requires that a complaint alleging misleading statements or omissions 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . all facts on which that belief is formed.'" *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011) (quoting 15 U.S.C. § 78u–4(b)(1)).

"Thus, the misrepresentation claims pled [under the Exchange Act] must satisfy the 'particularity' requirement of Rule 9(b) of the Federal Rules of Civil Procedure, the 'plausibility' requirement of *Iqbal*, and the scienter requirement of the PSLRA." *Id.* at 690–

91.

**REQUEST FOR INCORPORATION BY REFERENCE AND JUDICIAL NOTICE**

Defendants request the Court to take judicial notice and consider under the incorporation by reference doctrine, several documents, including SEC filings, analyst call transcripts, and reports filed in support of their motions to dismiss. (Doc. No. 41-2.) As set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' request.

While the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Furthermore, Federal Rule of Evidence 201(b) permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041–42 (S.D. Cal. 2015). Additionally, courts can consider documents under the "incorporation by reference" doctrine when a plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

Here, Defendants request consideration of several exhibits filed in support of their motions to dismiss. (*See* Doc. No. 41-2.) Defendants contend all the documents are appropriate subjects for consideration under judicial notice or the doctrine of incorporation by reference. (*Id*. at 11.) Plaintiffs object to some of Defendants' requests, urging the Court not to consider Exhibits 10-13, which are three FDA Summary of Safety and Effectiveness Data ("SSED") filings from Obalon, and its competitors, Orbera, and ReShape (Exhibits

10-12), and an October 31, 2016 analyst report published by Underwriter Defendant Canaccord (Exhibit 13). (Doc. No. 50 at 4 n.4.) As Plaintiffs do not oppose Exhibits 1-9, and the Court finds that these documents (SEC filings and analyst calls transcripts) are proper for consideration, Defendants' request for incorporation by reference and judicial notice is **GRANTED** as to Exhibits 1-9. The Court will now turn to Plaintiffs' objections.

First, Plaintiffs object to the consideration of Exhibits 10-13, arguing (1) Exhibit 10 is not referenced in the Complaint, (2) Exhibits 10-12 should not be judicially noticed because its contents and effect are subject to reasonable dispute, and (3) Exhibit 13 should not be judicially noticed because it is a biased report prepared by Underwriter Defendant Canaccord. (Doc. No. 50 at 8–10.) The essence of Defendants' argument is that consideration of Exhibits 10-13 is proper to demonstrate what was publicly available at the time the Northland Report concluded Obalon's stock was overvalued, in efforts to show that certain facts were actually disclosed, and thus not misleading under federal securities laws. (Doc. No. 41-2 at 10.)

The Court ultimately agrees with Plaintiffs that Exhibits 10-13, should not be considered by the Court at this stage of pleading because these extrinsic documents were not incorporated by reference in the Complaint, and are not proper subjects for judicial notice. While agency reports, such as Exhibits 10-12, are generally susceptible to judicial notice, the inquiry does not stop there when "there is a reasonable dispute as to what the report establishes." *Khoja*, 899 F.3d at 1001. Here, Plaintiffs have adequately disputed that certain facts purportedly disclosed by these reports are "contrary to the well-pleaded factual allegations of the Complaint." (Doc. No. 50 at 9.) Plaintiffs point out, as an example, that Defendants contend that the Obalon SSED report adequately disclosed patients' difficulty swallowing the Obalon capsule. But Plaintiffs also demonstrate that the SSED report included a photograph of the capsule that created the impression that the capsule was smaller than it really is. (*Id.* at 10.) As such, judicial notice would not be proper given the existence of "reasonable dispute" as to what was established in these SSED reports, and the effect of the SSED report on investors. *Khoja*, 899 F.3d at 1001.

Likewise, at this stage of the litigation, the Court will not consider Exhibit 13, an analyst report published by an Underwriter Defendant, as it was not incorporated by reference in the Complaint, and the Court finds that the report could potential reflect inherent bias rendering the report inappropriate for judicial notice. *See Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1282 (C.D. Cal. 2016) (rejecting request to judicially notice analyst reports because they "reflect an inherent bias favoring [Defendant]").

In essence, Defendants offer documents outside the four corners of the Complaint to argue disputed facts to demonstrate Defendants did not violate federal securities laws. Consideration of these documents would not be proper on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("The time for comparing 'evidence' is after discovery, during summary judgement, or at trial—not now.") (internal citations omitted)*; In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995–96 (S.D. Cal. 2005) (declining to incorporate numerous exhibits in SEC action where the complaint did not mention or rely on them, but the defendants instead "offer[ed] the documents as evidence that Defendants did not commit a securities violation").

In sum, the Court **GRANTS** Defendants' request as to Exhibits 1-9, but **DENIES** the Defendants' request as to Exhibits 10-13. Accordingly, the Court's review "on [this] motion to dismiss is limited to the contents of the [C]omplaint." *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992). Regarding the unopposed documents, the Court will refer to them as it finds appropriate.

## DISCUSSION

### I. Claims under the Securities Exchange Act of 1934 Section 10(b) & Rule 10b-5 Against Defendants Obalon, Rasdal, and Plovanic

The Court first addresses Obalon Defendants' motion to dismiss Count III of the Complaint. Under Count III, Lead Plaintiff asserts claims under Section 10(b) of the Exchange Act and Rule 10b–5 against Defendants Obalon, Rasdal, and Plovanic. Section 10(b) of the Exchange Act forbids: (1) the use or employment of any deceptive device, (2)

in connection with the purchase or sale of any security, and (3) in contravention of Securities and Exchange Commission rules and regulations. 15 U.S.C. § 78j(b); *see Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Additionally, Rule 10b–5, promulgated by the SEC under Section 10(b), forbids the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made not misleading." 17 C.F.R. § 240.10b–5; *see Dura*, 544 U.S. at 341. To succeed in a private civil action under Section 10(b) and Rule 10b–5, a plaintiff must establish "(1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance. . .; (5) economic loss; and (6) loss causation, *i.e.*, a causal connection between the material misrepresentation and the loss." *Dura*, 544 U.S. at 341–42.

Here, Obalon Defendants challenge three of the elements necessary to prove a Section 10(b) and Rule 10b-5 claim: (1) Lead Plaintiff failed to allege a materially false or misleading statement; (2) Lead Plaintiff failed to allege scienter; and (3) Lead Plaintiff failed to establish loss causation. (Doc. No. 41-1.) For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Obalon Defendants' motion to dismiss Count III of the Complaint.

### A. Materially False or Misleading Statements

To allege an actionable false or misleading statement, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012) (quoting 15 U.S.C. § 78u-4(b)(1)). This is a demanding standard, requiring a plaintiff to allege with specificity "contemporaneous statements or conditions," *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001), that demonstrate both "how and why the statements were false" when made, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1071–72 (9th Cir. 2008). Lead Plaintiff alleges, and Obalon Defendants challenge "three categories of misstatements

and omissions: (1) the Obalon Balloon's performance; (2) the Company's financials; and (3) revenue recognition." (Doc. No. 48 at 22.) The Court will address each category of allegedly false and misleading statements.

**1. Statements Relating to Ease of Use, Safety, and Efficacy of the Obalon Balloon**

In the Complaint, Lead Plaintiff alleges Obalon Defendants misrepresented the Obalon Balloon's superior ease of use, safety, and efficacy relative to its competitors' products. (*Id.* at 22.) Obalon Defendants move to dismiss, arguing the statements were not false because the facts purportedly concealed were disclosed and not inconsistent with Obalon Defendants' statements. (Doc. No. 41-1 at 19.) Additionally, Obalon Defendants contend that many of the complained-of statements were principally statements of corporate optimism. The Court agrees with Obalon Defendants.

As a preliminary note, the Court agrees that many of the statements Lead Plaintiff protests as misleading are in fact statements of corporate optimism. It is well-established that "[v]ague, generalized, and unspecific assertions" of "corporate optimism or statements of mere puffing" cannot state actionable material misstatements of fact under federal securities law." *See Glen Holly Entm't. Inc. v. Tektronix. Inc.*, 352 F.3d 367, 379 (9th Cir. 2003). Here, for example, the Complaint details several statements describing the Obalon Balloon such as "easy to place," "simple and convenient," "about as easy. . . as it can [be] to place" as false and misleading. (Compl. ¶¶ 127, 130, 132, 137.) However, these statements amount to no more than generalized statements of corporate optimism as to the convenience of the Obalon Balloon product, and puffery in its comparison to the endoscopic procedure of Obalon's competitors. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("[M]ildly optimistic, subjective assessment hardly amounts to a securities violation. Indeed, 'professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives.'") (internal citations omitted).

Second, Lead Plaintiff's theory that the Company omitted material information regarding the performance of the Obalon Balloon also fails to state a claim because Obalon

Defendants in fact disclosed the allegedly omitted information in its SEC filings. *See Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) ("As for omissions, the term generally refers to the failure to disclose material information about a company, as opposed to affirmative manipulation.") As an example, Lead Plaintiff alleges Obalon Defendants failed to disclose that 90% of patients experienced adverse effects. (Compl. ¶ 138.) But as Defendants highlight, this very fact was disclosed in the Company's Form S-1/A, Form 424B, and Form 10-K for 2016 and 2017. (Doc. No. 41-1 at 20 (stating that the documents disclosed "90.8% of patients who received the Obalon balloon system experienced an event the FDA classifies as an adverse device event").)

Lead Plaintiff counters Obalon Defendants essentially assert a "truth-on-the-market" defense, which is generally inappropriate at the motion to dismiss stage. (Doc. No. 48 at 24); *In re Thoratec Corp. Sec. Litig.*, No. C-04-03168 RMW, 2006 WL 1305226, at *4 (N.D. Cal. May 11, 2006) ("A 'truth-on-the-market' defense is available in principle . . . but not at the pleading stage.") (internal quotations and citations omitted). Obalon Defendants retort they are not raising a "truth-on-the-market" defense as to the ***materiality*** of an allegedly false or misleading statement but are simply pointing out that the purportedly omitted information was actually disclosed. (Doc. No. 59 at 9–10.) A "truth-on-the-market" defense applies where "a defendant's failure to disclose material information may be excused where the information was made credibly available to the market by ***other sources***." *Nguyen v. Radient Pharm. Corp.*, No. SACV11–0406, 2011 WL 5041959, at *6 (C.D. Cal. Oct. 20, 2011) (citing *In re Amgen, Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008)) (emphasis added). As such, Lead Plaintiff's "truth-on-the-market" argument is misplaced. Obalon Defendants here argue they disclosed all required information in their Form S-1/A, Form 424B, and 2016 and 2017 Form 10-K to the public. (Doc. No. 41-1 at 19–21.) Obalon Defendants ***are not*** contending they failed to "make required disclosures but should be excused because other sources have already made the same information available." *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 n.6 (N.D. Cal. 2012). As such, Obalon Defendants are not

raising an inappropriate "truth-on-the-market" defense. Because Obalon Defendants disclosed the allegedly omitted facts regarding the Obalon Balloon's performance, Lead Plaintiff is unable to state a claim based on an omissions theory as to ease of use, safety, and efficacy of the device.

Consequently, the Court concludes there was no Section 10(b) and Rule 10b-5 violation for statements relating to the Obalon Balloon's performance.

**2. Statements Regarding Obalon's Financial Condition**

Next, Lead Plaintiff asserts Obalon Defendants misrepresented the Company's financial condition. More specifically, Lead Plaintiff maintains Obalon Defendants touted the strength of Obalon's financials and interest from clients, when in actuality, sales had stalled, and new client interested had declined. (Compl. ¶¶ 142, 140; Doc. No. 48 at 26.) Obalon Defendants move to dismiss on the ground that there were no false or misleading statements as to Obalon's financial health. (Doc. No. 41-1 at 23.)

As an initial matter, several of the challenged statements relating to Obalon's financial condition are expressions of corporate optimism and puffery. Statements such as client interest is "very, very high," (Compl. ¶ 140), "I'm pleased that we had the percentage of reorder we do" (*Id.*), and that market opportunities are "astounding" (*Id.* ¶ 144) are statements of general corporate confidence routinely dismissed as inactionable puffery. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2012 WL 1868874, at *13 (N.D. Cal. May 22, 2012), aff'd, 759 F.3d 1051 (9th Cir. 2014) (statement that market opportunity was "very, very large" was puffery); *Mazzaferro v. Aruba Networks Inc.*, No. 13-CV-02342-VC, 2014 WL 12680773, at *1 (N.D. Cal. Aug. 1, 2014) (holding statement of "[w]e are pleased with our continued momentum," to be corporate optimism); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *11 (N.D. Cal. July 23, 2013) (stating that statements such as "amazing" and "impressive" are "generalized, vague and unspecific assertions, constituting mere 'puffery' upon which a reasonable consumer could not rely.") (internal citations omitted).

Statements of corporate optimism aside, Lead Plaintiff's Complaint also alleges

Obalon Defendants "falsely touted reorders [of the Obalon Balloon] from existing clients," assuring investors, "it's not as that these people make purchase and then sort of lose interest. ***I think all of them committed***. . ." (Compl. ¶ 140 (emphasis in original).) The Court concludes Lead Plaintiff has adequately pled the existence of a false or misleading statement. Here, Lead Plaintiff states with particularity the reasons why these statements were misleading, given that the majority of the clients did not reorder Obalon Balloons, and Obalon Defendants used a few committed clients to distract investors from the overall lack of interest by a majority of clients. (*Id.* ¶ 106.) For example, despite flaunting the apparent financial health of the Company and reorder sales from existing customers, Lead Plaintiff points out Obalon Defendants admitted that a client who accounted for 36% of reorders was not even "the company's most active site." (*Id.*) As such, Obalon Defendants' statements regarding commitment of reorder sales "would give a reasonable investor the 'impression of a state of affairs that differs in a material way from one that actually exists.'" *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Lead Plaintiff also alleges that Obalon Defendants omitted material facts as to Obalon's financial state, rendering statements suggesting financial success misleading. For instance, Lead Plaintiff challenges Obalon Defendants' positive statements about the Company's 2017 increasing Obalon Balloon reorder sales without revealing that the starter sales kits were decreasing, and the reorder sales were concentrated in a small number of clients. (Compl. ¶ 145(a)-(b).) However, Obalon Defendants counter that the excerpts of Obalon Defendants' 1Q Earning Call transcript provided by Lead Plaintiff shows Obalon Defendants disclosed that "the growth from quarter-to-quarter is driven by reorders, not simply new stocking orders." (Compl. ¶ 141.) But Lead Plaintiff succeeds in pleading that the omission of decreasing starter sales kits, and that reorder sales were concentrated in a small number of clients was misleading because it gave the impression of healthy and equally distributed reorder accounts. Indeed, Obalon Defendants' argument that they disclosed that reorders was driving revenue is unavailing because statements that are "literally true" can nevertheless be misleading in "their context and manner of

presentation." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008). Such is the case here.

### 3. Statements Concealing Obalon's GAAP Violations

The Court next turns to the allegations of Obalon Defendants' Generally Accepted Accounting Principles ("GAAP") violations. Lead Plaintiff claims Obalon Defendants "devised and executed a scheme to inflate 4Q17 revenues by prematurely recording future revenues" in violation of GAAP while "touting 4Q17 as '[their] highest quarter ever.'" (Compl. ¶ 148; Doc. No. 48 at 28.) The thrust of Obalon Defendants' argument is that Lead Plaintiff cannot survive the motion to dismiss because Lead Plaintiff does not explain what Obalon's accounting decision was, and why and how that decision was outside a zone of reasonable accounting practices. (Doc. No. 41-1 at 29.)

As the Ninth Circuit has held, if properly pled, "overstating of revenues may state a claim for securities fraud, as under GAAP, 'revenue must be earned before it can be recognized.'" *In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005) (quoting *Hockey v. Medhekar*, 30 F. Supp. 2d 1209, 1216 (N.D. Cal. 1998). "To properly state a claim for accounting fraud, plaintiffs must 'plead facts' sufficient to support a conclusion that [d]efendant[] prepared the fraudulent financial statements and that the alleged financial fraud was material." *In re Peerless Systems, Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 991 (S.D. Cal. 2002) (citations omitted) (alterations in original). Additionally, when pleading irregularities in revenue recognition, plaintiffs should allege "(1) 'such basic details as the approximate amount by which revenues and earnings were overstated'; (2) 'the products involved in the contingent transaction'; (3) 'the dates of any of the transactions'; or (4) 'the identities of any of the customers or [company] employees involved in the transactions.'" *In re McKesson*, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000) (quoting *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 204 (1st Cir. 1999). Plaintiffs need not allege each of those particular details, but they must allege enough information so that "a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue." *In re McKesson*, 126 F. Supp.

2d at 1273.

Here, the Court concludes that Lead Plaintiff has adequately alleged facts supporting a plausible conclusion that Obalon Defendants concealed a revenue recognition scheme, and that the alleged GAAP violation was material. First, in its Complaint, Lead Plaintiff claims that the Company overstated its Q4 2017 revenue by 5%[1], acknowledged the revenue recognition, and then corrected its Q4 2017 revenue after whistleblower allegations. (Compl. ¶¶ 162, 165.) Specifically, Lead Plaintiff explains this revenue overstatement resulted from Obalon's failure to defer an appropriate amount of revenue associated with certain patient lead lists offered to physicians as part of Obalon's year-end sales promotion. (*Id.* ¶¶ 157–162.) At the pleading stage for accounting fraud, Lead Plaintiff's allegations are sufficient to state a claim because it provides the "basic details" such as the approximate amount by which revenues were overstated, and the transactions involved that led to the purported overstatement. *See In re McKesson*, 126 F. Supp. 2d at 1273. Second, the Complaint also pleads that the overstatement was "quantitively" material as the amount was over 5%, and "qualitatively" material because the overstatement "masked . . . expectations for the enterprise" and concerns a segment of the business that "plays a significant role" in Obalon's profitability. (Compl. ¶ 166.) Accordingly, Lead Plaintiff has alleged with particularity misleading statements as to Obalon Defendants' revenue recognition scheme.[2]

**B. Scienter**

The Court now turns to Obalon Defendants' argument that Lead Plaintiff's Complaint should be dismissed for failure to plead scienter. (Doc. No. 41-1 at 30.)

---

[1] Obalon Defendants argue that Lead Plaintiff's Opposition is inconsistent with the Complaint on the amount of revenue deferred. However, at this stage of litigation, Lead Plaintiff need only allege an "approximate amount by which revenues and earnings were overstated," not a precise amount. *See In re McKesson*, 126 F. Supp. 2d at 1273.

[2] The Court, at this stage of the litigation, does not pass judgment on whether the Company's own investigation into the alleged GAAP violations resulted in proper findings. The Court, at this stage, only holds that Lead Plaintiff has pled with enough specificity a plausible claim for account fraud.

"Scienter is [the] essential element of a § 10(b) claim." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1032 (9th Cir. 2002). The Supreme Court has explained that scienter for purposes of Section 10(b) and Rule 10b–5 is "the defendant's intention to deceive, manipulate or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)). This means a plaintiff "must provide, in great detail, all the relevant facts forming the basis of her belief" that the defendant has acted with "deliberate recklessness or intent." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), abrogated on other grounds by *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). A "strong inference" is one that a reasonable person would deem "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. When analyzing the sufficiency of a plaintiff's scienter pleadings, the Court must "determine whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011). "[I]f no individual allegation is sufficient, we conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id.*

**1. Scienter For Statements Relating to Obalon's Financial Condition**

The Court holds that the Complaint alleges sufficient facts with particularity demonstrating a strong inference of scienter.[3] With regard to the statements relating to Obalon's financial condition, Lead Plaintiff adequately alleges the existence of scienter. Lead Plaintiff invokes the "core operations doctrine," arguing that because the Obalon Balloon was the Company's only product in a nascent business, it would be "absurd" to suggest Obalon Defendants were not privy to the information about Obalon's financial

[3] As the Court holds that there were no actionable statements with respect to the Obalon Balloon's performance, the Court will not address the scienter arguments for that category of statements.

condition. (Doc. No. 48 at 33–34.) Obalon Defendants counter "corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter" absent specific allegations of information conveyed to management. (Doc. No. 41-1 at 30–31 (quoting *Metzler*, 540 F.3d at 1068).) But here, Lead Plaintiff points out Defendant Plovanic himself maintained "we work closely with our audit committee to develop robust procedures for appropriately analyzing and recognizing revenue." (Compl. ¶ 194.) This fact provides a strong inference that Obalon Defendants closely monitored the Company's financials, and were aware of the state of Obalon's financial condition. Indeed, to suggest Obalon Defendants were not aware of the Company's financial conditions as it related to the revenue of the Company's only product—while Obalon Defendants were working closely with the audit committee—would strain credulity. *See Align Tech.*, 856 F.3d at 620 ("[P]articularized allegations that defendants had actual access to the disputed information may raise a strong inference of scienter.") (internal citations and quotations omitted).

**2. Scienter For Statements Relating to GAAP Violations**

Lead Plaintiff's Complaint also provides another independent basis for a finding of scienter. Specifically, Lead Plaintiff emphasizes Obalon Defendants' accounting misconduct as evidence of scienter. (Doc. No. 48 at 31–33.) Obalon Defendants refutes these allegations, arguing that Lead Plaintiff's conclusory statements that "Defendants knew or recklessly disregarded" that the statements were false does not meet Lead Plaintiff's burden of alleging particularized allegations. (Doc. No. 41-1 at 31–32.) The Court agrees with Lead Plaintiff.

"[W]hen significant GAAP violations are described with particularity in the complaint, they may provide powerful indirect evidence of scienter. After all, books do not cook themselves." *McKesson*, 126 F. Supp. 2d at 1273. Here, Lead Plaintiff provides particularized facts suggesting Obalon Defendants were aware of the alleged revenue recognition scheme. Lead Plaintiff does not simply conclude that Obalon Defendants "knew or should have known" about the accounting errors but specifically points to: (1)

the Company's rush to calculate financials for 4Q 2017, (2) the arrangement of a secondary offering eleven days after the release of the 4Q 2017 financials, and (3) the allegations that a whistleblower from within the Company alerted auditors Obalon Defendants had incorrectly recognized revenue and management had "misled investors." (Doc. No. 48 at 31–32; Compl. ¶ 183.) Taken together, these facts collectively paint a plausible picture that Obalon Defendants were aware of the GAAP violations when touting their strong 4Q performance. *See Tellabs*, 551 U.S. at 322–23 ("The inquiry . . . is whether all facts alleged, taken collectively, give rise to a strong inference of scienter, not whether an individual allegation, scrutinized in isolation, meets that standard."). While Obalon Defendants contend there was a non-culpable explanation for these allegations (namely, the Company was optimistic about its future, attempted to raise capital, and investigated the purported misconduct), the Court finds that at this stage of pleading, the facts presented by Lead Plaintiff provide a reasonable inference of scienter, and one that is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

**C. Loss Causation**

Even when deceptive conduct is properly pleaded, a securities fraud complaint must also adequately plead "loss causation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011). Loss causation is shorthand for the requirement that "investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss." *Id.* Thus, like a plaintiff claiming deceit at common law, the plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event. *Dura*, 544 U.S. at 343–44. The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through "corrective disclosures" which "caused the company's stock price to drop and investors to lose money." *Halliburton*, 573 U.S. at 264.

Lead Plaintiff presents three disclosures to establish loss causation for the statements relating to Obalon's financial condition and revenue recognition scheme: (1) the disclosure of the secondary offering, (2) the secondary offering's sudden cancellation due to an

investigation of an Obalon whistleblower's charge that the Company was improperly recognizing revenue; and (3) the disclosure of inflated 4Q 2017 revenue and poor 1Q 2018 results. (Doc. No. 48 at 38.)

Specifically, the Complaint details the "cracks in the façade of the Company's financial condition appeared at the start of 2018" when on January 16, 2018, "Obalon announced that it would return to the market to ask for an additional $35 million in public financing . . . just 15 months after the Company's IPO raised $67.4 million." (Compl. ¶ 179.) Lead Plaintiff alleges that the disclosure "resulted in a three-day slide of Obalon's stock price, which fell from $7.93 on January 16, 2018, to $5.24 on January 19, 2018, a 33.92% decline." (*Id.* ¶ 180.) The Complaint also alleges that on January 23, 2018, Obalon disclosed that a whistleblower had submitted a complaint to the Company's independent auditors for the Company's improper revenue recognition, and that the Company would investigate the alleged misconduct. (*Id.* ¶¶ 181, 183.) Following this announcement, Obalon's stock price dropped 33.33% from $5.19 per share to $3.46 per share. (*Id.* ¶ 182.) Then, on May 10, 2018, Obalon revealed their disappointing 1Q 2018 earnings, and disclosed that its strong 4Q 2017 results may have been attributed to its New Year promotional scheme. (*Id.* ¶ 187.) Based on this news, Obalon's stock dropped further from $4.32 per share to $2.85 per share. (*Id.* ¶ 189.) In the face of these allegations, Obalon Defendants' main argument against a finding of loss causation is that "Plaintiff does not allege, with particularity or at all, how these alleged investor reactions pertained to the revelation of fraud . . . ." (Doc. No. 41-1.)

As the Ninth Circuit has recently held, "[d]isclosure of the fraud is not a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018), cert. denied, 139 S. Ct. 2741 (2019). While the January 16, 2018 announcement of a secondary offering, standing alone, did not allege a corrective disclosure, the additional allegations of the cancellation of the secondary offering, the disclosure of an investigation into the purported accounting fraud, and the immediate drop

in stock prices thereafter following each announcement is enough to show "corrective disclosures" which "caused the company's stock price to drop and investors to lose money." *Halliburton*, 573 U.S. at 264.

Defendant cites to *Loos v. Immersion Corp.*, 762 F.3d 880, 883 (9th Cir. 2014), for the proposition that "[t]he announcement of an investigation does not 'reveal' fraudulent practices to the market." Notwithstanding the Ninth Circuit's recent articulation that the disclosure of fraud is not necessary to establish loss causation, *First Solar Inc.*, 881 F.3d at 753, as Ninth Circuit has also explained, "the announcement of an investigation can 'form the basis for a viable loss causation theory' if the complaint also alleges a subsequent corrective disclosure by the defendants." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016).

Here, the Complaint does not only allege that an investigation was disclosed. Indeed, the Complaint further contends: (1) Obalon's disclosure of the accounting fraud investigation caused its stock price to drop precipitously; (2) the secondary offering was announced and cancelled, which caused the stock to drop; and (3) there was a corrective disclosure by Obalon Defendants after the announcement of the investigation whereby Obalon Defendants revealed their poor financial results for 1Q 2018. (Compl. ¶¶ 187–88). Taken together, these allegations are sufficient to establish loss causation at the pleading stage. *See, e.g.*, *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2016 WL 3681831, at *12 (S.D. Cal. July 12, 2016) (holding that the "the combination of partial disclosures" was "sufficient to plead loss causation at this stage."); *Pub. Employees Ret. Sys. of Mississippi, Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 324 (5th Cir. 2014) (holding loss causation allegations "collectively constitute and culminate in a corrective disclosure that adequately pleads loss causation for purposes of a Rule 12(b)(6) analysis. This holding can best be understood by simply observing that the whole is greater than the

sum of its parts.”).[4]

* * *

Accordingly, the Court holds that Lead Plaintiff has adequately stated a claim for a violation of Section 10(b) and Rule 10b-5 of the Exchange Act.

### I. Claims Under Section 20(a) of Securities Exchange Act of 1934

The Count will now address Obalon Defendants’ motion to dismiss Count IV of Lead Plaintiff’s Complaint for violation of Section 20(a) of the Exchange Act against Defendants Rasdal and Plovanic. “[U]nder Section 20(a), plaintiff must prove: (1) a primary violation of federal securities laws . . .; and (2) that the defendant exercised actual power or control over the primary violator.” *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). “The statute is remedial and is to be construed liberally. It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a ‘controlling person’ liable.” *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998). “Plaintiff need not show that the defendant was a culpable participant in the violation, but defendant may assert a ‘good faith’ defense.” *Everex Systems*, 228 F.3d at 1065. Thus, “[t]o establish the liability of a controlling person, the plaintiff does not have the burden of establishing that person’s scienter distinct from the controlled corporation’s scienter.” *Arthur Children’s Trust v. Keim*, 994 F.2d 1390, 1398 (9th Cir. 1993).

Here, as discussed above, Lead Plaintiff has adequately pled a primary violation of Section 10(b) and Rule 10b–5. Therefore, Lead Plaintiff prevails on the first prong of the Section 20(a) requirements. Turning to the second prong, “[w]hether the defendant is a controlling person is an intensely factual question, involving scrutiny of the defendant’s participation in the day-to-day affairs of the corporation and the defendant’s power to control corporate actions.” *Everex Systems*, 228 F.3d at 1065 (internal citations omitted).

---

[4] Lead Plaintiff cannot rely on the May 10, 2018 disclosure to establish loss causation because it sold its shares of Obalon stock ***before*** the Company announced its disappointing quarter. *See Metzler*, 540 F.3d at 1062.

Lead Plaintiff sufficiently alleges control liability under Section 20(a) against Defendants Rasdal and Plovanic. To establish control, Plaintiffs must allege that Defendants Rasdal and Plovanic were active in the day-to-day affairs of Obalon, or that they exercised specific control over the preparation and release of the allegedly misleading statements. *Id.* Lead Plaintiff has adequately done so. The Complaint contains numerous allegations regarding Defendants Rasdal and Plovanic's involvement in preparing the alleged financial misstatements. (*See e.g.*, Compl. ¶ 183 ("[W]e work closely with our audit committee to develop robust procedures for appropriately analyzing and recognizing revenue.") In addition, the Complaint alleges that both Defendants Rasdal and Plovanic were involved in the day-to-day business of Obalon in their roles as Chief Executive Officer, and Chief Financial Officer, respectively. (*Id.* ¶ 232.) Further, according to the Complaint, Defendants Rasdal and Plovanic were provided with, or had unlimited access to, "copies of the Company's reports, press releases, public filings, and other statements alleged by Lead Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected." (*Id.* ¶ 231.)

Accordingly, Obalon Defendants' motion to dismiss Count IV of the Complaint is **DENIED**.

## II. Claims Under Section 11 of the Securities Act of 1933

The Court now addresses all Defendants' motion to dismiss Count I of the Complaint. In Count I, Plaintiff TAPP asserts a violation of Section 11 of the Securities Act against all Defendants. Section 11 establishes liability for false or misleading statements or omissions contained within a registration statement. 15 U.S.C. § 77k(a). Section 11 contains no scienter requirement and may be based on "innocent or negligent material misstatements or omissions." *Anderson v. Clow* (*In re Stac Elecs., Sec. Litig.*), 89 F.3d 1399, 1404 (9th Cir. 1996) (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994). In order to state a claim under Section 11, the plaintiff must prove: "(1) the registration statement contained a material omission or misrepresentation, (2) the plaintiff

purchased a security that was part of a registered offering, and (3) the defendant falls into one of the enumerated classes." *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2005 WL 5036360, at *6 (S.D. Cal. Jan. 3, 2005).

**A. Whether Plaintiff TAPP's Claims are Time-Barred**

As a preliminary matter, Defendants contend Plaintiff TAPP's Section 11 claim is time-barred. (Doc. No. 42-1 at 16.) Section 11 claims must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. This one-year statute of limitations begins to run when the plaintiff discovered or should have discovered the untrue statement or omission. *See F.D.I.C. v. Countrywide Fin. Corp.*, No. 12–cv–04354, 2012 WL 5900973, at *3 (C.D. Cal. Nov. 21, 2012); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1082 (N.D. Cal. 2010) (noting "discovery . . . occurs not only once a plaintiff actually discovers the facts, but also when a hypothetical reasonably diligent plaintiff would have discovered them").

Defendants argue Plaintiff TAPP discovered or should have discovered the basis for their Section 11 claim no later than June 21, 2017, the date on which the Northland Report was released. (Doc. No. 42-1 at 16.) Defendants also assert that relation back under Federal Rule of Civil Procedure 15(c) cannot save Plaintiff TAPP's time-barred claims. (*Id.* at 16–19.) Plaintiff TAPP maintains Defendants are wrong because: (1) the partial disclosures did not disclose all "the facts constituting the violation"; (2) the statute was tolled; and (3) the filing date relates back to the *Cook* Complaint. (Doc. No. 49 at 38.) The Court agrees with Defendants.

First, Plaintiff TAPP "discovered or should have discovered" the facts surrounding its Section 11 claim when the Northland Report was released. Here, Plaintiff TAPP alleges the Northland Report, released on June 21, 2017, was the corrective disclosure for the Section 11 claim, because it revealed for the first time the difficulties patients experienced with the Obalon Balloon. (Compl. ¶¶ 170–73.) Indeed, the Complaint alleges, "[b]efore June 21, 2017, investors had only heard positive reports from the analysts." (Compl. ¶ 169.)

As such, Plaintiff TAPP, by June 21, 2017 "discovered or should have discovered" its claims against Defendants. Thus, Plaintiff TAPP's claims were time-barred by June 21, 2018. Because the Complaint was filed in October 5, 2018, the Complaint alleging a Section 11 violation is untimely.[5]

Second, Plaintiff TAPP's Section 11 claim did not relate back to the *Hustig* or *Cook* Complaints. Federal Rule of Civil Procedure 15(c) provides "that an amendment adding a new defendant will relate back to the original complaint" if three ***separate*** requirements are met: (1) the claim brought against the new defendant "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"; (2) within 120 days of the initial complaint, the new defendant received notice of the action; and (3) within 120 days of the initial complaint, the new defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Wilkins-Jones v. Cty. of Alameda*, 2012 WL 3116025, at *6 (N.D. Cal. July 31, 2012) (quoting Fed. R. Civ. P. 15(c)).

Relation back is unavailable to Plaintiff TAPP because its Section 11 claim against Defendants did not arise out of "the conduct, transaction, or occurrence" set out in the original pleading. *Id.* at *6. The *Hustig* and *Cook* Complaints challenged statements relating to Obalon's accounting policies and GAAP compliance while the Consolidated Complaint alleges for the first time misleading statements concerning the safety of use, ease of placement, and efficacy of the Obalon Balloon. (Doc. No. 42-1.) The fact that the Consolidated Complaint and the *Hustig* and *Cook* Complaints base their claims on the same

---

[5] Plaintiff TAPP's argues that the statute of limitation to bring its Section 11 claims was equitably tolled by the lead plaintiff appointment process. But Plaintiff TAPP does not provide any case law to support this point. Plaintiff TAPP cites *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1282 (E.D. Wash. 2007) for the proposition that Plaintiff TAPP did not have "control over when a court renders its decision" as to the appointment of Lead Plaintiff. However, the Court does not find that Plaintiff TAPP has shown an "extraordinary circumstance" to permit the Court to invoke equitable tolling. *See Barrett v. Forest Labs.*, Inc., 2015 WL 4111827, at *3 (S.D.N.Y. July 8, 2015). The Court also notes that Plaintiff Cook was able to timely file his complaint, which also asserted Section 11 claims. As such, Plaintiff TAPP's Section 11 claims were not equitably tolled.

offering document does not change this analysis. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1133 (C.D. Cal. 2011) (no relation back where "the Original Complaint relates to the same offerings and the same offering materials as the FAC. However, the complaints differ with respect to the specific facts alleged regarding those offering materials."); *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, No. 08 CIV. 9203 (RJS), 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010) (holding that even when both the Consolidated Complaint and original complaint arose from the same offering documents, there was no relation back where original complaint focused on the omission of information about the cost of raw materials while the new allegations involved company's regulatory requirements, labeling practices, or brand image).

Having found that Plaintiff TAPP fails the first requirement of relation back, the Court need not address the other elements. Plaintiff TAPP's Section 11 claim is time-barred.

**B. False or Misleading Statements**

Even if Plaintiff TAPP's Section 11 claim was timely, the Court would still find that Plaintiff TAPP fails to state a claim under Section 11.[6] A registration statement may violate Section 11 in three ways by: (1) containing "an untrue statement of material fact"; (2) omitting "a material fact required to be stated therein"; or (3) omitting a material fact "necessary to make the statements therein not misleading." 15 U.S.C. § 77k. Materiality is ordinarily a factual question reserved for the jury. *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995).

First, as already explicated above, most of the statements Plaintiff TAPP challenges

---

[6] The Court also concludes that Defendants have presented an adequate affirmative defense to a Section 11 claim. Defendants argue "Section 11 defendants have an absolute 'negative causation' defense pursuant to Section 11(e) for any [plaintiff] who disposed of their shares prior to the corrective disclosure." *In re McKesson*, 126 F. Supp. 2d at 1262. Here, Plaintiff TAPP contends that the corrective disclosure was the June 21, 2017 Northland Report. (Compl. ¶¶ 169–78.) However, Plaintiff TAPP sold all its shares of Obalon stock by March 2017, before the corrective disclosure occurred. Thus, Plaintiff TAPP cannot attribute its losses to the Northland Report, which Plaintiff TAPP alleges revealed the false and misleading statements.

as "an untrue statement of material fact" with regard to the safety of use, ease of placement, and efficacy of the Obalon Balloon, were statements of non-actionable puffery. Statements such as "overcome the limitations of traditional intragastric balloons" (Compl. ¶ 52), "simple and convenient placement" (*Id.* ¶ 53), "favorable safety profile" (*Id.* ¶ 55) and "durable" (*Id.* ¶ 57) are nothing more than expression of corporate optimism and puffing. *See In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1158 (S.D. Cal. 2008) (no actionable statement when "statements that are so exaggerated or vague that no reasonable investor would rely on the statement when considering the total mix of available information.") (internal citations and quotations omitted).

Second, most of the alleged omissions relating to the performance of the Obalon Balloon Plaintiff TAPP complains were actually disclosed. As to the statements concerning the Obalon Balloon's efficacy, for example, Plaintiff TAPP alleges that Obalon "failed to disclose that its product tested worse than its competitors" because "Orbera patients lost 22 pounds over the course of treatment, while Obalon patients lost only 15 pounds." (Compl. ¶ 58.) But as Defendants point out, Defendants disclosed these very facts in the offering materials. (*See, e.g.*, Doc. No. 41-1, Ex. 1 at 87, 93 (disclosing both the weight loss for the Orbera trial and SMART trial).) Additionally, as another example, with respect to the statements concerning the Obalon Balloon's ease of placement, Plaintiff TAPP alleges Defendants did not disclose that "the Obalon treatment did not include a safety gastrointestinal scan that is customary with the endoscopic placement of the Orbera and ReShape balloons." (Compl. ¶ 29.) However, as Defendants underscore, the offering materials expressly explain the procedure to place the Obalon Balloon, and also explained that the Obalon Balloon did not require the initial endoscopy. (Doc. No. 42-1 at 28.) The Court finds that these disclosures are sufficient to demonstrate that Defendants disclosed the allegedly omitted material facts. Indeed, federal securities laws only prohibit false or misleading statements, it does not require Defendant to arrange disclosed information in a way preferred by a plaintiff. *See Brody*, 280 F.3d at 1006 ("Rule 10b-5 . . . prohibit[s] only misleading and untrue statements, not statements that are incomplete."); *Lefter v. Yirendai*

*Ltd.*, No. CV1606437MWFAGRX, 2017 WL 2857535, at *7 (C.D. Cal. June 20, 2017).

### III. Claims Under Section 15 of the Securities Act

Lastly, in Count II of the Complaint, Plaintiff TAPP brings a claim under Section 15 of the Securities Act against the Obalon Defendants. Section 15 extends liability to so-called "controlling persons"—persons who control those found liable under Section 11 are also liable to plaintiffs. *See* 15 U.S.C. §§ 77o (requiring a primary violation of § 11 or § 12(a)(2)). Liability under Section 15 is thus predicated on finding a violation of Section 11. *Anderson v. Clow*, No. 92-1120-R, 1994 WL 525256, at *12 (S.D. Cal. June 29, 1994). Here, because Plaintiff TAPP does not state a claim under Section 11, Plaintiff TAPP's Section 15 claim also fails. Therefore, the motion to dismiss Count II of the Complaint is **GRANTED**.

## CONCLUSION

The Court concludes that Lead Plaintiff has sufficiently alleged a Section 10(b) and Rule 10b-5 claim against Defendants Obalon, Rasdal, and Plovanic. Likewise, Lead Plaintiff's Section 20(a) claim against Defendants Rasdal and Plovanic survives Defendants' motions to dismiss. However, the Court holds that Plaintiff TAPP has failed to plead a Section 11 and 15 claim against all Defendants.

Accordingly, the Court (1) **GRANTS IN PART AND DENIES IN PART** the Obalon Defendants' motion to dismiss; (2) **GRANTS** the Underwriter Defendants' motion to dismiss, without leave to amend; and (3) **GRANTS IN PART AND DENIES IN PART** Defendants' request for incorporation by reference and judicial notice.

**IT IS SO ORDERED.**

Dated: September 25, 2019

Hon. Anthony J. Battaglia
United States District Judge